Filed 07/02/26

VERMONT SUPERIOR COURT
Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00746

---

Village Square at Pico Condominium Owners Association, Inc. v. Carol Adams

---

## DECISION AND ORDER ON PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES

Before the Court in this action is a request by Plaintiff for recovery of attorneys' fees. For reasons that follow, the request is granted in part and denied in part.

### Background

Plaintiff, the Village Square at Pico Condominium Owners' Association, Inc. ("the Association"), brought this action in February 2024 against Defendant, Carol Adams, a unit owner. The complaint alleged violations of the Declaration of Condominium, breach of contract, and private nuisance stemming from Ms. Adams' storage of excessive personal property within her unit. The Association claimed that this conduct, which the Association labeled "hoarding," obstructs a limited easement reserved under the Declaration, which permits the Association to access and inspect common facilities—such as power, gas, and heating installations—upon reasonable advance notice and during normal business hours. The Association also alleged that the conditions in Ms. Adams' unit constituted, or risked becoming, a nuisance to other unit owners—for example, by fostering conditions that threatened the condominium with a rodent or pest problem.

In December 2024, the Association moved for summary judgment. As the moving party on claims for which it has the burden of proof at trial, the Association was required to present evidence that Ms. Adams, the owner of the servient estate, denied the Association's limited right to enter and inspect common facilities within her unit upon reasonable notice. The Association failed to meet this burden. The affidavit of the Association's property manager, which detailed his recollections from an attempted inspection in September 2023, did not specify the time of his attempted inspection, and did not indicate that advance notice was given to Ms. Adams. As such, that affidavit failed to show that Ms. Adams had interfered with the Association's limited easement.

The Association also sought to support its motion with several photographs of Ms. Adams's unit. However, the Association failed to provide a sworn affidavit verifying who took the photographs, when they were taken, what they depicted, or whether Ms. Adams was given reasonable advance notice before they were taken. Without this authentication, the Court found the photographs inadmissible. The Court ultimately denied the Association's motion, noting

1

there was no competent evidence proving that conditions inside the unit constituted a breach of the Declaration, a breach of contract, or a private nuisance.[1]

A bench trial was held on November 4, 2025, and in March of 2026, the Court issued its Findings of Fact, Conclusions of Law, and Order. Based on the testimony of the Association's property manager, as well as admitted exhibits, the Court found that Ms. Adams had piled personal items within her unit in an excessive manner, such that it substantially interfered with the Association's right to access and inspect common areas and facilities. The Court also found that these conditions risked creating a nuisance to other unit owners, and that Ms. Adams had breached the contract under which she promised to address and fix the conditions within her unit.[2] The Court ordered Ms. Adams to adhere to the Declaration provisions that required her to grant the Association reasonable access to common areas and facilities within her unit. The Court also enjoined Ms. Adams from creating or keeping excessive piles of personal property in her unit, on grounds that they threaten to create a nuisance (specifically, a potential attraction and breeding ground for rodents, pests, or insects). The Court further ordered Ms. Adams to allow agents of the Association to remove any obstructions and excessive piles of property found in her unit and store such materials at a storage unit at Ms. Adams' expense.

On June 22, 2026, the Court held a hearing on the Association's request for attorney's fees. During the hearing, the Association provided testimony from two witnesses: Sean Clark, a Board member and President of the Association, and Christian Chorba, Esq., of Downs Rachlin Martin PLLC, a law firm based in Burlington. Mr. Clark testified that this litigation was reasonable and necessary, since Ms. Adams refused to cooperate or sufficiently address the access, safety, and nuisance concerns identified by the Association. Mr. Clark also explained that the Association had paid all of the invoices from Downs Rachlin Martin, copies of which had been admitted into evidence as Exhibit 18.

Attorney Chorba testified that he has roughly 11 years of experience as an attorney, and that his hourly rate in this case was initially $330.00 and increased during the course of this case to $380.00. He testified that $380.00 per hour was a reasonable rate for litigators who practice in Rutland County with a similar level of experience. He explained that several Vermont attorneys with similar experience and who practice outside of Chittenden County have told him that their hourly rates are generally between $300.00 to $400.00.

Attorney Chorba testified that the Association's total request for attorneys' fees and costs is $62,485.71, as reflected in his firm's invoices (Ex. 18). This total includes 28.6 hours billed by

---

[1] The Court separately found that the Association's Bylaws expressly referred to an amended and restated Declaration of Condominium that had been recorded in 2013 in a particular volume of the Town of Killington land records. Yet, the Association had neglected to provide a copy of that new Declaration in support of its motion for summary judgment. The Court concluded that it could not grant summary judgment on a claim for breach of the Declaration where the terms of new Declaration were not made part of the record. The Association subsequently explained, through an amended Complaint, that its Bylaws were mistaken in referring to the existence and recording of an amended and restated Declaration.

[2] The Court granted judgment to Ms. Adams on the private nuisance claim for lack of proof, and on the basis that such a claim could not be asserted by an association of all unit owners against a condominium unit owner.

Jon S. Readnour, a now-retired attorney of the same law firm. Attorney Chorba testified that his own billed fees totaled approximately $49,000 and that the time expended on the case was "reasonable."

Analysis

I. Legal Standards On Attorneys' Fees

The general rule in Vermont, which is known commonly as the "American Rule," is that each side to a civil lawsuit must bear their own costs of litigation (including attorneys' fees), except where a special legal authority, a contract, or unique circumstances (such as bad faith litigation) warrant recovery or cost-shifting. *See Depot Square Pizzeria, LLC v. Dep't of Taxes*, 2017 VT 29, ¶ 7, 204 Vt. 536. Here, 27A V.S.A. § 4-117(a), a provision within the Vermont Common Interest Ownership Act, "[l]ike other fee-shifting statutes, . . . is an exception to the usual 'American rule' requiring parties to bear their own costs of litigation." *Post & Beam Equities Group, LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 47, 199 Vt. 313. That statutory provision "permits court costs and attorney's fees to be awarded in the discretion of the court to any party that prevails in an action." Official Comment 1 to 27A V.S.A. § 4-117.

As to the amount of attorney's fees to be awarded in a case, "the touchstone is reasonableness." *Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶ 13, 181 Vt. 45. "Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims." *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 250 (1995) (quotation marks omitted). Thus, "[i]n determining the reasonableness of a fee award, courts must begin with the . . . 'number of hours reasonably expended on the case multiplied by a reasonable hourly rate.'" *Kwon v. Eaton*, 2010 VT 73, ¶ 21, 188 Vt. 623 (mem.) (quoting *L'Esperance v. Benware*, 2003 VT 43, ¶ 22, 175 Vt. 292). That figure is referred to as the "'lodestar figure,'" which is considered presumptively reasonable, but is subject to an adjustment, either upwards or downwards, "depending on the circumstances of the case, including, among other factors, 'the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation.'" *Id.* (quoting *L'Esperance*, 2003 VT 43, ¶ 22); *see also Trevor v. Icon Legacy Custom Modular Homes, LLC*, 2019 VT 54, ¶ 86, 210 Vt. 614 (lodestar is "a starting point," from which court may make adjustments, based on, *inter alia*, twelve factors listed in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)).

II. Attorney Readnour's Fees

Beginning with the lodestar figure for Attorney Readnour, the law firm invoices in Exhibit 18 indicate that his hourly rate was $395.00. However, the Association failed to provide much evidence demonstrating that this rate was reasonable. Specifically, the record contains no information regarding Attorney Readnour's experience, skills, or accomplishments. Consequently, there is little evidentiary basis to determine what hourly rate a comparable attorney would charge under similar circumstances. "While a trial court may rely on its own experience and knowledge when determining attorney's fees, evidence of reasonableness of the fees prayed for should be available for consideration." *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 605 (1986). The record did show, however, that the Association was Attorney Readnour's own

client before he joined Downs Rachlin Martin as "of counsel." Further, the record shows that Attorney Readnour served as lead counsel or "first chair" in this case, and Attorney Chorba was "second chair," until Attorney Readnour's retirement in mid-2024. The invoices reflect this division of responsibility, as they fairly show Attorney Readnour was the primary, supervising attorney.[3] The Court finds, based on its knowledge and experience, and in light of the limited record presented, that a reasonable hourly rate for such an attorney handling litigation in Rutland County is $350.00. The Court will thus use that rate in calculating the lodestar for Attorney Readnour.

The Court has also reviewed the time entries billed by Attorney Readnour, and it finds that his work on this matter was not excessive, unnecessary, duplicative, or wasteful. His billed time totaled 28.6 hours. Thus, the lodestar figure for Attorney Readnour is $10,010.00.

Neither party offered arguments or evidence for an upward or downward departure from the lodestar figure for Attorney Readnour, except for Ms. Adams' general opposition to any fee recovery, on grounds that this entire lawsuit was brought in bad faith. The Court does not find the litigation was in bad faith. The Court credits the testimony by Mr. Clark that reasonable and repeated efforts were made to settle this matter and avoid litigation altogether, and that litigation was reasonably necessary, given Ms. Adams non-cooperation and refusal to address the conditions inside her unit. The Court's Findings of Fact and Conclusions of Law also fairly rebut the notion that this case was pursued without a good faith basis. Accordingly, the lodestar figure for Attorney Readnour ($10,010) is found to be a reasonable amount of recoverable fees, and such fees will be awarded to the Association.

III. Attorney Chorba's Fees

Turning to the lodestar figure for Attorney Chorba, the Court finds both the hourly rate and the time billed to be unreasonable in certain respects.

A. Hourly Rate

Regarding his rate, the Court does not find that it is reasonable for an attorney with Attorney Chorba's experience to charge $380.00 per hour for matters litigated in Rutland County. Based on the Court's experience and knowledge, very experienced litigation partners who practice in Rutland County, and who litigate matters far more complex and demanding than those in this case, charge less than $380.00 per hour. Further, as noted above, Attorney Chorba testified that the reasonable range of hourly rates is between $300.00 and $400.00. The Court finds that the rate of $330.00, the rate charged by Attorney Chorba at the outset of this case, is reasonable. The Court will thus use that hourly rate in calculating the lodestar for Attorney Chorba.

B. Attorney Time

---

[3] Indeed, the invoices are replete with time entries by Attorney Chorba that suggest that he consulted or sought counsel from Attorney Readnour on various issues, through mid-2024.

Turning to the time claimed by Attorney Chorba, the Court will reduce the allowed time, on multiple grounds. In deciding attorney fees, "[t]he ultimate question is . . . whether the fee award is reasonable given the demands of the case," *Constr. Drilling, Inc. v. Eng'rs Constr., Inc.*, 2020 VT 38, ¶ 28, 212 Vt. 323 (quotation omitted), and here, an award in excess of $60,000 is unreasonable given the minimal demands of this case. This was a straightforward lawsuit—the legal issues and fact issues were not at all complex or requiring any degree of advanced skill or experience. The Associated needed only its property manager's testimony, and perhaps another witness, to prove Defendant's liability. Relatedly, the Court is not aware of any discovery-related issues or disputes in this case, and there is no suggestion that any intensive factual investigation or an extraordinary document review was needed. This was not a circumstantial case—the evidence of liability was based on personal, first-hand observations, as well as a few photographs and limited correspondence involving Defendant or the physical condition of her unit. The Association was not seeking damages, and thus, had no burden to prove damages. There was no complex expert testimony, nor any "difficult" adverse witnesses or any evidence that was difficult to obtain or present. This was not a case where evidence had grown stale due to the passage of time, or which was otherwise difficult to discover or present.

The legal issues in this case were also not demanding. The applicable law in this case did not require extensive or demanding legal research or briefing. That law largely consisted of a few unambiguous provisions in the Condominium Declaration and Rules, as well as a basic settlement contract that appeared in an email drafted by Attorney Readnour. The common-law private nuisance claim appeared duplicative, as the Declaration and Rules offered a much lower standard of proof (e.g., "threatening" or "risking" a nuisance, rather than an "unreasonable" and "substantial" interference). Finally, the self-represented Defendant provided minimal opposition at any stage of the litigation.

This matter could have been resolved entirely at the summary judgment stage. The Association's motion for summary judgment failed because the Association did not satisfy its evidentiary burden as the moving party on its claims. Specifically, the Association failed to submit sufficient sworn affidavits from its agents—evidence that easily could have been secured.[4] In is a fundamental tenet of Rule 56 procedure that facts offered must be supported by admissible evidence. Tellingly, the bench trial was essentially a testimonial reprise of what could have and should have been set forth by affidavits submitted in support of the Association's motion for summary judgment.

While a decision to pursue a summary judgment is discretionary, utilizing that procedural device reasonably and effectively is critical to saving the court and the parties time and expense. *See* V.R.C.P. 56, Reporter's Notes (rule permits judgment to be "entered without the time and expense of trial"). The fees incurred by Attorney Chorba for the bench trial were necessary, given that the Association's summary judgment motion had failed, but that does not mean such fees were reasonably incurred.

---

[4] Other defects in the Association's motion, identified in the Court's summary judgment ruling, are perhaps reflective of a longstanding inattention or inadvertence with respect to the consistency and accuracy of the Association's governing documents. In the Court's experience, such problems are not unique to this condominium, and the Court is certainly not faulting any Board member or attorney for such. However, the defects could have been fixed or clarified, at least prior to the motion for summary judgment.

Accordingly, the Court finds as a matter of discretion that attorneys' fees incurred by the Association for litigation matters *after* the summary judgment stage were not reasonably incurred. Thus, with very limited exceptions, the Court will reduce from Attorney Chorba's lodestar figure all hours billed for work that he performed after the Court's summary judgment decision, which was issued in late February of 2025.[5]

### C. Attorney Time – Additional Issues

Additionally, the Court finds that the time expended by Attorney Chorba on certain other matters in this case was unreasonable, and that this warrants an additional, 25% reduction of attorney time. For example, to prepare the summary judgment motion, a short affidavit for one witness, and a reply memorandum—and excluding entirely the 4.9 hours he spent conferring with Board members or other agents of the Association about such matters—Attorney Chorba spent 39.6 hours. Given the nature of this case, that amount of time was unreasonably excessive.

Further, Attorney Chorba claimed time, at his hourly rate, for tasks that do not appear to be those ordinarily performed by an attorney, much less by an attorney in a law office that is staffed by paralegals and assistants. These time entries include, for example, "2/29/24, prepare service packet for Rutland County Sheriff's Office (0.6 hours);" "3/5/24, Work with legal assistant to effectuate service on Carol Adams (0.2 hours);" "3/26/25, Phone call with Rutland County Sheriff's Office regarding service on Carol Adams (0.2 hours);" "4/5/24, Phone call with Rutland County Sheriff's Office for update on service (0.1 hours);" "01/20/25, Email court order extending deadline to reply in support of motion for summary judgment to clients (0.10 hours)."[6] Other entries of the same type, although they pertained to tasks performed after the summary judgment stage (and are excluded on that basis), include: "04/08/25, Emails with Village Square board regarding connecting to discuss strategy moving forward (0.2 hours);" and "11/10/25, Work with legal administrative assistant to order transcript of bench trial last week (0.2 hours)."[7]

---

[5] As an exception to the disallowance of fees incurred post-summary judgment, the Court will allow 8.3 hours billed by Attorney Chorba in April of 2026 in connection with obtaining dismissal of Ms. Adams' appeal of the Court's March 2026 Order to the Supreme Court. That appellate litigation was reasonable and necessary to secure (or defend) the Court's favorable Order. But the Court will not allow "fees on fees," *i.e.*, fees incurred in recent months and weeks for the purpose of recovering attorneys' fees. Neither the governing statute nor the Declaration clearly authorize such fees, and the Court is reluctant to imply them, given the default American Rule. Further, at least in this case, the party seeking enforcement of the Declaration needs no further incentive to pursue enforcement or the recovery of fees. Moreover, the Association obtained limited success on the issue of fees, and the Court did not find the hearing presentation to have been particularly effective. In fact, the Association neglected to assert or explain why the statute should be construed to authorize fees on fees.

[6] Proper service of process is certainly a fundamental and essential step in litigation. Yet, it appears that Attorney Chorba billed, at his attorney rate, approximately four hours for work related to the service of process. There was nothing argued or put in the record showing why service of process on a single defendant, with a known address and apparently in regular contact with the Association's attorneys (see emails from December of 2023), required this amount of time, particularly attorney time.

[7] The Court identifies these entries not to support a "double-reduction" of claimed attorney time, *cf. Trevor*, 2019 VT 54, ¶ 92, but to underscore that there is a pattern of time entries—before and after the summary judgment stage of this case—that appear excessive or unwarranted, or do not appear to be the billable work of an attorney. Indeed, there were billing entries for ordinary attorney tasks, performed after the summary judgment stage, that were

To be clear, the Court does not doubt that Attorney Chorba expended his time on such matters. The Court also does not question that the performance of such tasks reasonably furthered his client's interests. The controlling consideration here, however, is that these are not tasks for which an attorney or "of counsel" at a large Vermont law firm, with roughly 11 years of experience, should bill at the hourly rate for an attorney.

Given these additional issues related to attorney time, the Court will further reduce, by 25%, the number of hours claimed by Attorney Chorba for purposes of the lodestar figure.[8]

D.  Summary of Lodestar Determination

The lodestar figure for Attorney Chorba is calculated as follows:

a.  Reasonable hourly rate = $330.00.

b.  Hours spent, through summary judgment stage = 64.9 hours

c.  Plus, hours spent defending against an appeal = 8.3 hours

d.  Thus, combined hours allowed = 73.2 hours

e.  Combined hours allowed, reduced by 25% = 54.9 hours.

Thus, the lodestar calculation for Attorney Chorba is:  hourly rate ($330.00) multiplied by time allowed (54.9 hours), equals $18,117.00.

As noted above, the lodestar is presumptively reasonable, but subject to upward or downward modifications, based on additional considerations. The parties, however, have not put forward any argument or pointed to factors warranting any departures from the lodestar. *Cf. also* 1 Robert L. Rossi, *Attorneys' Fees* § 5:1 (3d ed.) (the determination of the lodestar figure "implicitly subsumes many, if not most, of th[e] factors" that courts typically rely upon for an upward or downward modification); *e.g., Trevor*, 2019 VT 54, ¶ 87 (affirming reliance on some *Hensley* factors in arriving at lodestar baseline). The Court thus finds the lodestar reasonable for Attorney Chorba and will award the Association that amount ($18,117).

_____

unreasonably excessive. For example, in May of 2025, the Association sought leave to amend its complaint. Given the permissive standard involved, the Court's prior familiarity with the primary reason for the amendment, and the fact of a self-represented opponent, the 10.7 hours drafting the Rule 15 motion and a supporting affidavit was unreasonably excessive. These hours have been excluded in full already for a separate reason, but the time entries serve to demonstrate a general pattern of unreasonable expenditures of time by Attorney Chorba. That informs the Court's additional 25% reduction of time for purposes of calculating the lodestar.

[8] The Court will also reduce by 25% the time spent on appellate matters. Again, this percentage reduction is warranted because several billing entries by Attorney Chorba, regarding a number of different litigation tasks throughout the case, appear unreasonably excessive. The Court declines to engage in any further "line-by-line review" or "exacting, line-by-line explanation of its conclusion" that the requested fees are excessive and should be reduced by 25%. *In re Sullivan*, 674 F.3d 65, 70-71 (1st Cir. 2012) (quotations omitted).

IV. Allowable Costs

Title 27A V.S.A. § 4-117(a) also permits the Court to award "costs" to the prevailing party. The Association neglected to argue or provide any briefing as to what that term, "costs," encompasses here. The Court thus consults case law for guidance. According to our Supreme Court:

> The term "costs" has a plain and well-established meaning in the context of a civil action for damages.  Rule 54 provides that "[c]osts other than attorneys' fees shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs."  V.R.C.P. 54(d)(1).  By statute, the prevailing party is entitled to recover filing fees, service fees, and "witness fees" of $30 per day for attendance before a court or at a deposition, plus mileage for in-state travel.  32 V.S.A. §§ 1471(a), 1551, 1553.  Additionally, the court may in its discretion award deposition fees and mediation fees as costs. See V.R.C.P. 54(g) (permitting court to award costs incurred in taking of reasonably necessary depositions); V.R.C.P. 16.3(c)(1)(C) (giving court discretion to award mediation fees to prevailing party).

*Epsom v. Crandall*, 2019 VT 74, ¶ 35, 211 Vt. 94.[9] Thus, in *Epsom*, the Supreme Court affirmed the trial court's decision awarding the prevailing plaintiffs their filing fees, deposition costs, and mediation fees, but denying their request for other costs, including copying costs, postage fees, surveyor's fees, and expert witness fees.  The Wright & Miller treatise on the Federal Rules of Civil Procedure similarly construes "costs," as follows:

> "Costs" refers to those charges that one party has incurred and is permitted to have reimbursed by the opposing party as part of the judgment in the action. Although "costs" has an everyday meaning synonymous with "expenses," the concept of taxable costs under Rule 54(d) is more limited and represents those expenses, including, for example, court fees, that a court will assess against a litigant. Typically costs are allowed in favor of the winning party against the losing party to provide at least partial indemnification of the expenses incurred in establishing the claim or defense. Under the American system, costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit. . . .

10 M.K Kane, et al., *Fed. Prac. & Proc. Civ*. § 2666 (4th ed.).

In an effort to ascertain what costs incurred by the Association fell within the scope of "costs" as recognized in case law, this Court carefully sifted through all 59 pages of invoices submitted by the Association. The invoice dated April 3, 2024, lists a "Filing Fee" of $317.93,

---

[9] Entitled "Taxation of costs," 32 V.S.A. § 1471(a) provides as follows:  "There shall be taxed in the bill of costs to the recovering party in the Supreme and Superior Courts or the Judicial Bureau a fee equal to the entry fees, the cost of service fees incurred, and the total amount of the certificate of witness fees paid."

and a "Service Fee" of $100.00, and the Court will allow both as recoverable costs. The invoice of June 4, 2024, identifies a Service Fee of $17.32, which the Court will allow. The invoice of May 29, 2026, identifies a Filing Fee of $14.40, which the Court will also allow. The Court was unable to find any other expenses incurred or disbursements made by the Association's law firm that fairly constitute "costs."

Thus, the total of allowable costs is $449.65.

## V. Summary of Decision

The Court awards $10,010 to the Association, as the reasonable amount of fees incurred by Attorney Readnour. The Court awards $18,117 to the Association, as the reasonable amount of fees incurred by Attorney Chorba. The Court awards costs to the Association in the amount of $449.65. The Association's total award is thus $28,576.65. No argument or reasons were given for deferring or staying Defendant's obligation to reimburse the Association for the reasonable amount of fees and costs. Thus, the award will be due and payable by Defendant within 60 days.

## **ORDER**

Plaintiff's request for recovery of fees and costs in granted in part and denied in part. Plaintiff is hereby awarded $28,576.65 in attorneys' fees and costs. That award is due and payable by Defendant within 60 days of the date that this Decision and Order is filed and entered in the docket of this case.

Plaintiff is directed to submit a form of judgment with the court within 14 days. V.R.C.P. 58(d).

Electronically Signed on: Thursday, July 2, 2026 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge

9